Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIUS MANOLE,<br><br>    Plaintiff,<br><br>v.<br><br>SOUTHWESTERN ENERGY COMPANY, CATHERINE A. KEHR, JOHN D. GASS, GREG D. KERLEY, JON A. MARSHALL, PATRICK M. PREVOST, ANNE TAYLOR, DENIS J. WALSH III, S.P. JOHNSON IV, and BILL WAY,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Marius Manole ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.    This is an action against Southwestern Energy Company ("Southwestern Energy" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Southwestern Energy and Indigo Natural Resources LLC ("Indigo").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Southwestern Energy common stock.

7. Defendant Southwestern Energy is an independent energy company that engages in the exploration, development, and production of natural gas, oil, and natural gas liquids in the

United States. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "SWN."

8. Defendant Catherine A. Kehr ("Kehr") is Chairman of the Board of the Company.

9. Defendant John D. Gass ("Gass") is a director of the Company.

10. Defendant Greg D. Kerley ("Kerley") is a director of the Company.

11. Defendant Jon A. Marshall ("Marshall") is a director of the Company.

12. Defendant Patrick M. Prevost ("Prevost") is a director of the Company.

13. Defendant Anne Taylor ("Taylor") is a director of the Company.

14. Defendant Denis J. Walsh III ("Walsh") is a director of the Company.

15. Defendant S.P. Johnson IV ("Johnson") is a director of the Company.

16. Defendant Bill Way ("Way") is President, Chief Executive Officer, and a director of the Company.

17. Defendants Kehr, Gass, Kerley, Marshall, Prevost, Taylor, Walsh, Johnson, and Way are collectively referred to herein as the "Individual Defendants."

18. Defendants Southwestern Energy and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On June 2, 2021, Southwestern Energy announced that it had entered into a definitive merger agreement with Indigo under which the Company would acquire Indigo for approximately $2.7 billion. The total consideration of $2.7 billion will be comprised of $400 million in cash, approximately $1.6 billion in Southwestern Energy common stock and $700 million of assumed 5.375% senior notes due 2029. In connection with the Proposed Transaction,

3

the Company is seeking shareholder approval to issue more shares of its common stock. The press release announcing the Proposed Transaction states, in pertinent part:

### Southwestern Energy Announces Agreement to Acquire Indigo Natural Resources

*Two premier US natural gas basins, one leading natural gas company*

June 02, 2021 07:30 AM Eastern Daylight Time

SPRING, Texas--(BUSINESS WIRE)--Southwestern Energy Company (NYSE: SWN) (the "Company" or "Southwestern") today announced that it has entered into a definitive merger agreement with Haynesville producer Indigo Natural Resources, LLC ("Indigo") under which it will acquire Indigo for approximately $2.7 billion. The transaction is expected to close early in the fourth quarter of 2021, subject to customary closing conditions.

\*   \*   \*

**Transaction and Timing**

The total consideration of $2.7 billion will be comprised of $400 million in cash, approximately $1.6 billion in SWN common stock and $700 million of assumed 5.375% senior notes due 2029.

The stock consideration consists of approximately 339 million shares of Southwestern Energy common stock, calculated utilizing the 30-day volume-weighted average price as of May 28, 2021, of $4.72. No Indigo shareholder will receive more than 10% of Southwestern Energy's pro forma outstanding shares in connection with this transaction.

The transaction was unanimously approved by each of Southwestern Energy's and Indigo's board of directors. The transaction is expected to close early in the fourth quarter of 2021, subject to regulatory approvals, customary closing conditions and the approval by Southwestern Energy's shareholders.

**Advisors**

Goldman Sachs & Co. LLC served as the exclusive financial advisor to Southwestern and Skadden, Arps, Slate, Meagher & Flom LLP serve as legal advisor. Credit Suisse Securities (USA) LLC served as the exclusive financial advisor to Indigo and Kirkland & Ellis LLP served as legal advisor.

\*   \*   \*

**About Southwestern Energy**

Southwestern Energy Company is an independent energy company engaged in natural gas, natural gas liquids and oil exploitation, development, production and marketing.

**About Indigo Natural Resource**

Indigo Natural Resources LLC is one of the largest natural gas producers in the Haynesville Shale and the third largest private natural gas producer in the U.S. Indigo is an experienced operator, focused in northern Louisiana with direct access to Gulf Coast markets and associated industrial and LNG demand growth. Indigo is headquartered in Houston, Texas. For more information, please visit the Company's website at www.ndgo.com.

20. On July 20, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

21. The Proxy Statement, which recommends that Southwestern Energy shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Southwestern Energy's and Indigo's financial projections; (ii) the financial analyses performed by Southwestern Energy's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Goldman Sachs.

22. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation to the SWN Shareholders; (ii) Reasons for the Approval of the Stock Issuance in Connection with the Merger; (iii) Opinion of SWN's Financial Advisor; and (iv) Certain Unaudited Forecasted Financial Information.

23. Unless and until the material misstatements and omissions (referenced below) are

remedied before the August 27, 2021 shareholder vote on the Proposed Transaction, Southwestern Energy shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Southwestern Energy's and Indigo's Financial Projections**

24. The Proxy Statement omits material information concerning Southwestern Energy's and Indigo's financial projections.

25. With respect to the "Forecasted Financial Information," the Proxy Statement fails to disclose: (1) all line items underlying (i) EBITDA, (ii) Cash Flow from Operations, and (iii) Discretionary Free Cash Flow; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

26. The Proxy Statement provides that, in connection with its fairness opinion, "Goldman Sachs reviewed . . . certain internal financial analyses and forecasts for Indigo prepared by its management[.]" *See* Proxy Statement at 108.

27. Yet, the Proxy Statement fails to disclose any of Indigo's financial projections, despite the fact that such projections were prepared by Indigo management and were relied upon by Goldman Sachs in connection with its fairness opinion and related financial analyses. This information is further material as Southwestern Energy shareholders are expected to own approximately 67% of the combined company, but without Indigo's financial projections, the Company's shareholders cannot adequately evaluate and assess the value of Indigo or the combined company.

28. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company

6

and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

29. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

30. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited July 21, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

### 2. Material Omissions Concerning Goldman Sachs' Analyses

31. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman Sachs.

32. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis for Indigo*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.00% to 8.50%, (ii) perpetuity growth rates ranging from 0.50% to 1.50%, and (iii) LTM EBITDA multiples ranging from 4.7x to 6.9x and from 4.9x to 7.2x; (2) the unlevered free cash flow for Indigo on a standalone basis without taking into account the Synergies, and including the Synergies, from April 1, 2021 to December 31, 2025, and all underlying line items; (3) the range of illustrative terminal values for Indigo as of December 31, 2025; and (4) the net debt of Indigo as of March 31, 2021.

33. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Selected Precedent Transactions Analysis*": (1) the closing date of each transaction; and (2) the value of each transaction.

34. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis for SWN*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 6.50% to 8.00%, (ii) perpetuity growth rates ranging from 0.50% to 1.50%, and (iii) LTM EBITDA multiples ranging from 4.0x to 6.0x and from 4.1x to 6.2x; (2) the unlevered free cash flow for Southwestern Energy on a standalone basis and pro forma basis from April 1, 2021 to December 31, 2025, and all underlying line items; (3) the range of illustrative terminal values for Southwestern Energy as of December 31, 2025; (4) the net debt of Southwestern Energy as of March 31, 2021; (5) the pro forma net debt of Southwestern Energy as of March 31, 2021; and (6) the number of fully diluted outstanding shares of the Company's common stock as of March 31, 2021, on both a standalone and pro forma basis.

35. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis of SWN*": (1) the individual inputs and assumptions underlying the (i) EV/NTM EBITDA multiples of 4.5x, 5.0x and 5.5x, and (ii) illustrative discount rate of 8.60%; (2) the net debt of Southwestern Energy on a standalone and pro forma basis; and (3) the number of fully diluted outstanding shares of the Company's common stock on a standalone and pro forma basis.

36. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to Southwestern Energy shareholders. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Southwestern Energy shareholders are unable to fully understand Goldman Sachs' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3. Material Omissions Concerning Potential Conflicts of Interest Involving Goldman Sachs**

37. The Proxy Statement omits material information concerning potential conflicts of interest involving Goldman Sachs.

38. The Proxy Statement provides that "Goldman Sachs may receive an additional fee of up to $3,000,000 at SWN's discretion." The Proxy Statement, however, fails to disclose the circumstances under which Goldman Sachs may receive "an additional fee of up to $3,000,000 at SWN's discretion" and whether the Company intends to pay Goldman Sachs such a fee.

39. Disclosure of a financial advisor's compensation and potential conflicts of interest

9

to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

40. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

41. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

43. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

44. The false and misleading statements and omissions in the Proxy Statement are

material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

45. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

47. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the

Company which were or had become materially false or misleading.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 21, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
         zhalper@halpersadeh.com

*Counsel for Plaintiff*